## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DHARMA PROPERTIES, INC., )
    A Florida Corporation, )
  )
    Plaintiff )    Case No. 00-8363-CIV-HURLEY
  )
vs. )
  )
THE CITY OF DELRAY BEACH, FLORIDA, )
    A Florida Municipal Corporation, )
  )
    Defendant )
_____ )

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
### CITY OF DELRAY BEACH'S MOTION FOR SUMMARY JUDGMENT

PLAINTIFF Dharma Properties, Inc. ("Dharma"), by and through its undersigned attorneys, and pursuant to S.D. Fla. L.R. 7.5, respectfully submits this Memorandum of Law in Opposition to the City of Delray Beach's ("City") Motion for Summary Judgment[1] and states as follows:

### I.
### INTRODUCTION

The City's Motion for Summary Judgment and accompanying Memorandum essentially advance four grounds. First, the City asserts that Dharma made a technical error in its pleadings precluding Dharma from having "its day in court." Second, the City asserts that this Court – whose jurisdiction the City invoked – should abstain from hearing one of Dharma's claims. Third, the City challenges Dharma's standing to bring this case, both in federal court and otherwise. Finally, the City goes through the motions of addressing the substance of Dharma's constitutional claims.

---

[1] Plaintiff Dharma has filed concurrently with this pleading a separate Cross Motion for Summary Judgment and supporting Memorandum of Law. A Joint Appendix in support of the Cross Motion and this Memorandum in Opposition has also been filed.

Dharma respectfully submits that, as set forth in more detail in this Memorandum of Law, Dharma has standing and satisfies all conditions precedent to suit; and that the City's prayer that this Court abstain from hearing Count II is simply improper. Dharma agrees that summary judgment is appropriate for Counts II, III, and IV of its Complaint and has filed a Cross Motion with supporting Memorandum; and that on the indisputable facts, Dharma, not the City, is entitled to judgment as a matter of law. Accordingly, for the reasons set forth in this Memorandum of Law and the accompanying Cross-Motion for Summary Judgment, Dharma respectfully requests that this Court deny the City's Motion for Summary Judgment.

## II.
## THE THRESHOLD ISSUE OF STANDING

### A.    THE CITY'S ATTACKS ON DHARMA'S STANDING ARE IMPROPER.

As a threshold matter, Dharma submits that the City's motion for summary judgment on the grounds that Dharma lacks standing is improper. That is so because it is well-settled that standing is an essential aspect of the federal courts' subject-matter jurisdiction. See Matter of Extradition of Lang, 905 F. Supp. 1385, 1391 (C.D. Cal. 1995) (stating, "Standing is a threshold inquiry that derives from the Article III 'Case or Controversy' requirement. In the absence of a plaintiff with standing, a federal court lacks subject-matter jurisdiction to hear cases."); Sampson, 975 F. Supp. at 1120 (quoting BLACK'S LAW DICTIONARY 1405 (6th ed. 1990)) (stating, "'Standing is a jurisdictional issue which concerns [the] power of federal courts to hear and decide cases and does not concern ultimate merits of substantive claims involved in the action.'" (emphasis added)); Re/Max Intern. v. Realty One, Inc., 900 F. Supp. 132, 146-47 (N.D. Oh. 1995), aff'd 173 F.3d 995 (6th Cir. 1999), petition for cert. filed, 68 U.S.L.W. 3138 (U.S. Aug. 17, 1999) (No. 99-294) (stating, "a challenge to the 'standing' of a party is primarily a challenge to the limited jurisdiction of federal

courts 'to decide the merits of the dispute or of particular issues.'") (quoting <u>Warth v. Sedlin</u>, 422

U.S. 490, 498 (1975)).

It is also well-settled that a defensive motion attacking subject matter jurisdiction is a matter

of *abatement* and may not be brought as a motion for summary judgment.

> A determination of a summary judgment under Rule 56 is a final adjudication of the merits of the claim presented; if granted in favor of a claimant it affirmatively adjudges the merits of the claim and if in favor of the defendant the judgment is in bar and not in abatement. . . .
>
> Matter in bar is that which is sufficient to prevent a meritorious recovery on a claim. Res judicata, release, statute of frauds, statute of limitations and laches are examples of affirmative defenses that bar the claimant's recovery.
>
> Matter in *abatement*, on the other hand, only results in a dismissal of the action without prejudice; or if the action is not then dismissed, temporarily stays the prosecution thereof or results in a transfer to another forum. The following are matters in abatement: lack of jurisdiction over the subject matter . . . .
>
> Matter in *abatement* should normally be raised by a pre-pleading motion or in the responsive pleading in accordance with Rule 12(b), and not by a motion for summary judgment. Thus lack of jurisdiction over the subject matter should be raised by motion to dismiss or in the responsive pleading and not by a motion for summary judgment. Similarly, an objective as to a defect of parties . . . cannot be properly be raised by a motion for summary judgment.

Moore's Federal Practice, ¶ 56.03.

In other words, matters of *abatement*, such as standing, which is a part of subject matter

jurisdiction, may be only be advanced by a defendant by a Rule 12(b) motion to dismiss. That is so

because summary judgment, or any judgment for that matter, addresses the merits of a case, merits

which may be reached only if a court has subject matter jurisdiction. Put another way, if Dharma

has no standing, then this Court has no jurisdiction over any aspect of the merits of this action.  In these circumstances, had this action been originally brought in federal court and the court determined that Dharma had no standing, the Court's only authority would have been  to dismiss the action without prejudice.  In that this matter was filed in state court and subsequently removed to federal court by the Defendant City, this Court can have no jurisdiction over the merits of this case unless Dharma has standing.  Therefore, if this Court finds that Dharma does not have standing, then the only action this Court can take, having no subject matter jurisdiction, is to hold that removal was not proper, remand this cause to state court, and dismiss the City's Motion for Summary Judgment as moot.

> This court does not have original jurisdiction over this action. Thus removal  under § 1441 was not proper. .... Therefore the case is remanded to state court . The Court does not decide whether the state court has subject matter jurisdiction because the Court finds that it lacks subject matter jurisdiction to decide that question. Defendant's motion for summary judgment is denied as moot.

Woodward v. Turnage, 646 F. Supp. 219, 222  (E. D. Mo. 1986).

Although the record of Dharma's actions in this matter shows that Dharma is willing to pursue its legal remedies in either state or federal court, Dharma wishes to make it clear to this honorable Court that Dharma has standing in this Court.  That is important because the same principle of law that deprives this Court of subject matter jurisdiction if Dharma does not have standing controls this Court's jurisdiction to grant Dharma's Cross-Motion for Partial Summary Judgment, submitted concurrently with this Memorandum.  See Department of Commerce v. U. S. House of Representatives, 119 S. Ct. 765 (1999).

> We have repeatedly noted that in order to establish Article III standing, [a] plaintiff must allege personal injury fairly traceable to

-4-

the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment – as opposed to a motion to dismiss – however, mere allegations of injury are insufficient. Rather, a plaintiff must establish that there exists no genuine issue of material fact as to the justiciability or the merits.

Id. at 772.

Finally, there can be no genuine issue of material fact in regard to the final prong of the Supreme Court's standing prescription – a determination by this Court that the City's land development regulations are unconstitutional, on their face or as-applied will redress Dharma's injury no matter what its extent.

**C.     DHARMA HAS STANDING BEFORE THIS COURT.**

**1.     The Test for Standing in Federal Court.**

A case or controversy exists, for Article III purposes, when a plaintiff shows: (1) actual or imminent invasion of a legally protected, "concrete and particularized" interest; (2) a causal connection, "fairly traceable" from the defendant's conduct to the plaintiff's injury; and (3) the injury is likely to be redressed by a favorable ruling in federal court.  Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 261, 262 (1977) ("MHDC");  Lujan, 504 U.S. at 560-61.  Dharma easily satisfies all three prongs of the analysis.

Standing is an essential element of the cases and controversies requirement of Article III of the United States Constitution.  See Warth v. Sedlin, 422 U.S. 490, 498 (1975); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1975).  As such, standing is a threshold issue as to the federal courts' subject matter jurisdiction.  See Warth, 422 U.S. at 499; Sampson v. Federal Republic of Germany, 975 F. Supp. 1108, 1120 (N.D. Ill. 1997).  Central to the existence of a case or controversy

is "whether a plaintiff has an adequate interest to be entitled to a judicial determination." Maryland Right to Life State Political Action Committee v. Weathersbee, 975 F. Supp. 791, 793 (D. Md. 1997).

Property rights are fundamental interests created by state law and protected by the Constitutions of the State of Florida and the United States. Under Florida law, property rights are "woven into the fabric of Florida history," Shriners Hosp. v. Zrillic, 563 So. 2d 64, 67 (Fla. 1990) and property rights are secured by the Florida Constitution:

> Article I, section 2 provides that "[a]ll natural persons are equal before the law and have inalienable rights, among which are the right . . . to acquire, possess and protect property. . . ."

In Re Forfeiture of 1969 Piper Navajo, 592 So. 2d 233 (Fla. 1992). Dharma's legal responsibilities for various properties in the area subject to the City's regulations and actions, including one parcel which is contiguous to the Block 77 project, are evidently and indisputably sufficient interests to support Dharma's standing to challenge the City's regulations on their face and as-applied.

### 1. Dharma's Interests  Face Concrete, Imminent Injury as a Result of the City's Conditional Use Approvals and Changes to its Historic District Regulations.

Injury is the core of standing. See National Wildlife Fed.'n v. Hodel, 839 F.2d 694, 704 (D.C. Cir. 1988) ("NWF"). To demonstrate injury-in-fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan, 504 U.S. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)) (additional citations omitted).  The injury for which the plaintiff seeks redress need not be an economic one. See MHDC, 429 U.S. at 262-63. Aesthetic or

environmental interests are also protected.[2]  See NWF, 839 F.2d at 704, 715; see also Moreau v. Federal Energy Regulatory Comm'n, 982 F.2d 556, 565 (D.C. Cir. 1993) (holding that "'a permanent aesthetic eyesore'" is an injury-in-fact.).  In the land use context, actual ownership of land may be considered, but is certainly not a required element of standing.  See id. at 263; Sullivan Properties, Inc. v. City of Winter Springs, 899 F. Supp. 587 (M.D. Fla. 1995).

For example, in MHDC, a developer of low-income housing projects (MHDC) challenged a local zoning code as racially discriminatory.  MHDC, 429 U.S. at 254.  MHDC's only stake in the property it proposed to develop was an option contract that was contingent upon both rezoning and federal financing.  See id. at 256.  The Court recognized MHDC's standing to assert its own rights. See id. at 261.

The Court reasoned that MHDC's interest in making low-cost housing available in areas where such housing is scarce was sufficient interest to meet the test set forth in Warth.[3]  See id. at 262-63.  Moreover, the MHDC Court reached back to the seminal zoning cases of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926), Nectow v. City of Cambridge, 277 U.S. 183 (1928), and Village of Belle Terre v. Boraas, 416 U.S. 1 (1974), for the fundamental proposition that, "[f]oremost among

_____

[2] The threshold level of injury required to establish Article III standing is not high, and is more than adequate here.  "[E]ven a minor or non-economic injury will satisfy the strictures of Article III."  Family & Children's Center, Inc. v. School City of Mishawaka, 13 F.3d 1052, 1058 reh'g denied, sugg. for reh'g en banc denied, cert. denied, School City of Mishawaka v. Family & Children's Center, Inc., 513 U.S. 961 (1994); see also NWF, 839 F.2d at 704 (holding that the injury "need not be tangible or great:  an 'identifiable trifle' will do.").

[3] Significantly, Warth was also cited by the Lujan Court for its articulation of the standing test.  See Lujan, 504 U.S. at 560.  Also significant is that MHDC's interest in providing affordable housing, and its intent to build a project – not its contingent interest in a parcel of land – was the deciding factor as to its standing.  See MHDC, 429 U.S. at 262-63.

[MHDC's rights] is [its] right to be free of arbitrary or irrational zoning actions."[4]  Id. at 263.

The indisputable facts in the summary judgment record shows that Dharma is responsible for managing and protecting certain real property located in the district in which the City Commission has granted itself the power to increase density on a case by case basis.[5]  (App. B, Harvey Aff.)  No matter how the City tries, there can be no genuine issue of fact as to the nature of Dharma's responsibilities and interests, and that those responsibilities and interests and the property to which they append are immediately and directly affected by the challenged regulations.

Dharma concedes that while reasonable persons might differ as to the extent of the impact of the Block 77 project on Dharma's interests, Dharma submits that there can be no genuine issue of fact that the use, character and value of a one story building with a density of 3.3 units per acre will be adversely affected by the construction of a 350 by 400 by 56 foot building which is more than five times the height and 28 times the density of immediately adjacent (abutting) property for which Dharma has control and management responsibilities.  Stated differently, any issues of fact that the City might raise go to the extent of Dharma's injury, not to the existence of injury sufficient to support standing – which is the *reason d'etre* of the Article III inquiry.

In Florida, Sullivan Properties is an example comparable to Dharma's *sub judice*, of an interest in real property which supported standing.  Sullivan Properties involved a challenge to a city

---

[4] Arguably, in the land use context, a court's cite to Euclid and Nectow is as emphatic as a cite to Marbury v. Madison in a case involving jurisdiction.  In other words, an appropriate interpretation is: ". . . and we mean it."

[5] Dharma is responsible for controlling, managing, operating and protecting certain properties owned by its affiliates. (App. B, Harvey Aff.)  Dharma's responsibilities include acting on behalf of ownership in regard to public regulation of the properties, including development permitting; and in regard to the actions of others, public or private, which may affect the value, use or character of the properties. (App. B, Harvey Aff.)

commission's executive decision to deny an application for a variance to allow construction of a borrow pit.[6] See Sullivan Properties, 899 F. Supp. at 590. Like MHDC, Sullivan Properties was a "mere contract purchaser." See id. at 592. Like Arlington Heights, the city challenged, *inter alia*, Sullivan Properties' standing. See id. The court rejected the city's challenge as "without merit," recognizing first and foremost that Sullivan Properties "controlled the property and was authorized to act on behalf of the property's owner." Id. This status, combined with other consequences of the city's denial of the permit, were "sufficient . . . to fulfill . . . standing requirements." Id.

Dharma faces imminent, concrete injury-in-fact as a result of the City's decisions as to Block 77's applications for development approval. First, just as Sullivan Properties controlled (but did not own) affected property, Dharma controls affected properties in the immediate vicinity of Block 77's proposed project, including one parcel which is contiguous to the proposed 219 unit project. (Pl.'s Compl. at ¶¶ 7, 10; App. B, Harvey Aff.) Second, just as MHDC's business purpose supported its standing in MHDC, Dharma's responsibilities in regard to the rehabilitation, adaptive re-use, and protection of historic buildings supports Dharma's standing before this Court. (App. B, Harvey Aff.) Indeed, Dharma's business purpose is closely linked to both the "village-like" physical environment mandated by the City's Comprehensive Plan and the development restrictions of the City's Old School Square Historic Arts District.[7] (Pl.'s Compl. at ¶ 8; App. B, Harvey Aff.)  Third, the

---

[6] Sullivan Properties is relevant to the instant case on the issue of standing. However, its analysis of substantive due process is inapposite to this case because here the challenged decision was quasi-judicial rather than "executive." See Sullivan Properties, 899 F. Supp. at 595-96. Because they involve an exercise of discretion, quasi-judicial decisions, in the substantive due process arena, are more legislative than executive.

[7] Dharma's Complaint alleges that it and its affiliates "have invested substantial sums of money in reliance on the City's Comprehensive Plan which provides in part: The Central Business District . . . represents the essence of what is Delray Beach i.e. a 'village-like, community by the

proposed structure, which is approximately fifty-eight feet high (forty-six feet higher than the building on the adjoining parcel controlled by Dharma), is proposed to be packed with 92 units per acre (in contrast to Dharma's abutting parcel, which is built at a density of 3.3 units per acre). Thus, the City's action unquestionably impacts the value, function, use, and aesthetics of Dharma's adjacent and nearby properties in a manner significantly distinct from the City's general population. See NWF, 839 F.2d at 714. In light of these indisputable facts, the City's assertion that Dharma has not established an injury-in-fact is not just erroneous, it's ludicrous. The City maintains that Dharma "has failed to set forth a concrete injury . . ." (Def.'s Mem. of L. at 9), but ironically, Dharma's concerns and injuries are – literally – "concrete."

### 2. Dharma's Injuries Are a Direct Result of the City's Conditional Use Approvals and Land Development Regulation Amendments.

Dharma clearly satisfies the causation element of the standing calculus. The standing test set forth in Lujan requires that the alleged injuries be "'fairly . .. trace[able] to the challenged action of the defendant.'" Lujan, 504 U.S. at 560 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976). Although a plaintiff's injuries do not even have to be direct in order to support standing, see MHDC, 429 U.S. at 261, Dharma's injuries are nevertheless direct.

The City's grant of Block 77's conditional use applications and its modification of the historic district regulations to permit construction of a multilevel parking garage in an historic district are the last significant discretionary acts of the City that stand in the way of construction of the proposed mammoth structures. Those structures (a giant building and a parking garage) will injure Dharma's interest and responsibilities in regard to millions of dollars of property that has been

---

sea.'" (Pl.'s Compl. at ¶ 8)

acquired, restored, or redeveloped in accordance with the City's official policy:

> The Central Business District (CBD) represents the essence of what is Delray Beach i.e. a "village like, community by the sea." The continued revitalization is essential to achieving the overall theme of the City's Comprehensive Plan of "A City Set Apart in South Florida.

City of Delray Beach, Fla., Comprehensive Plan, Future Land Use Element, Obj. C-4.[8] Accordingly, the combination of the City's failure to adhere to its Comprehensive Plan and Land Development Regulations, and its application of a vague conditional use ordinance have placed Dharma directly in harm's way.[9]

### 3.   A Favorable Decision Will Redress Dharma's Injuries.

The third element of the Lujan test, redressability, is also satisfied here.  Redressability goes to whether "a favorable federal court decision likely would redress or remedy" the plaintiff's injuries. Family & Children's Center, Inc., 13 F.3d at 1058.  The redressability prong is satisfied when the plaintiff can show "a 'probabilistic benefit from winning a suit.'"  Id.  At its core, redressability exists when (1) the court can bind the relevant actors by its decision, and (2) has the authority to

---

[8] The City of Delray Beach, Fla., Community Redevelopment Plan further states:

> The redevelopment strategy for this area [the downtown area] shall be to increase the overall intensity of the downtown.  New development and redevelopment projects shall be structured to increase both daytime and nighttime activity within the area, but shall be appropriately designed and strategically located to maintain the "village-like" character of the area.

[9] The City attempts to dispose of the causation element by characterizing Dharma's interest as a mere economic interest in its management contracts with affiliated companies.  (Def.'s Mem. of L. at 10)  However, its argument is fundamentally flawed for two reasons.  First, an economic interest is not a required element for standing.  See MHDC, 429 U.S. at 262-63.  Second, Dharma's interest in rehabilitation and adaptive re-use of historic buildings, and preservation of the human-scaled "village-like" form of the City of Delray Beach extends beyond its particular management agreements.  (App. B, Harvey Aff.)

-11-

grant relief that is appropriately addressed to the alleged harm. See Lujan, 504 U.S. at 569.

Here, Dharma has requested declaratory and injunctive relief stemming from a specific quasi-judicial hearing involving specific parcels of land. Dharma respectfully requests, *inter alia*, that this Court enter judgment to prevent the City from applying an unconstitutionally vague code (or, alternatively, from unconstitutionally applying its code) in a manner that allows development of a project that will cause direct injury to Dharma. Such relief obviously will redress Dharma's injuries. Dharma also seeks damages, including attorney's fees and costs, which Congress and the courts have determined are appropriate redress for civil rights violations. See 28 U.S.C. § 1983 (2000).

This Court unquestionably has the authority to enter judgment that includes each of these forms of relief. Moreover, because the City is a proper party to this action, this Court's decision will bind it. If granted, Dharma's requested relief will redress its actual and imminent injuries.

## C.   DHARMA'S STANDING EXTENDS TO ITS AS-APPLIED CHALLENGE.

In light of the analysis presented above, the City's argument regarding Dharma's standing to bring Count II (Def.'s Mem. of L. at 10-12) is a farce. As shown, Dharma's injuries are direct and distinct from those of the general population of the City of Delray Beach. Therefore, Dharma need not assert the rights of third parties.[10]

---

[10] Significantly, even if Dharma had to meet the more demanding standard required of those who seek to assert the rights of others, it would still have standing to bring this case. If Dharma were to assert the rights of third parties, it would do so on behalf of its affiliated companies that own land affected by the City's actions – not on behalf of Block 77.

The City's contrary assertion, that Dharma's standing should hinge on a "special relationship" with Block 77 that entitles it "to stand in Block 77's shoes," is an affront to logic. (Def.'s Mem. of L. at 11) One need not even pause for a moment to understand that under Article III, no case or controversy exists between Block 77 and the City. Indeed, the City has given Block 77 everything that it wanted – and probably even more than it had hoped for.

While it is true that, generally, "'one may not claim standing . . . to vindicate the constitutional rights of some third party,'" Deerfield Med. Center v. City of Deerfield Beach, 661

The City's "third party standing" argument in Section VI of its Memorandum of Law is a not-too-clever attempt to obscure the true circumstances of this action. There is absolutely no support for the proposition that an "as-applied" challenge to local land use regulations is the exclusive right of a developer who seeks development approval. To the contrary, examples of as-applied claims brought by neighboring landowners abound. See, e.g., Renard v. Dade County, 261 So. 2d 832, 838 (Fla. 1972) (holding that neighboring landowner had standing to attack zoning decision as arbitrary and capricious.); Friedland v. City of Hollywood, 130 So. 2d 306, 309 (Fla. 2d DCA 1961) (recognizing that neighboring landowners have standing to "challenge the validity of an amendatory zoning ordinance" that amounted to "spot zoning" – "the right of an adjacent or nearby home owner directly affected by an alleged improper intrusion of [a service station] to challenge the validity thereof, is recognized.");[11] Albright v. Hensley, 492 So. 2d 852, 855 (Fla. 5th DCA 1986) (recognizing the right of a challenger that suffers special damages to bring suit to as to the arbitrary or unreasonable nature of a zoning decision.); see also Caloosa Property Owners Ass'n, Inc. v. Palm

_____

F.2d 328, 333 (11th Cir. 1981) (quoting Barrows v. Jackson, 346 U.S. 249, 255 (1952)), the general rule does not apply here. This is so because the justification for the rule of judicial self-restraint is "a belief that rights are most effectively asserted by those who can personally claim them." Id. The concern is "sufficiently eased to allow surrogate standing where there are circumstantial assurances of a litigant's effective advocacy of third party rights." Id. Those assurances are provided when the circumstances show that the litigant will "fully and aggressively assert the constitutional claims of the third persons." Id.

Such is the case here. Indeed, Dharma and its affiliates have identical interest in this litigation. Dharma is committed to fully and aggressively asserting the constitutional and statutory claims asserted in its Complaint.

[11] In Friedland, the ordinance at issue was in the nature of a "use variance" for a particular parcel. See Friedland, 130 So. 2d at 309. Therefore, the plaintiff's challenge is technically "as-applied." The legislative "use variance" procedure described in Friedland has since evolved into the quasi-judical "conditional use" approval, which is required by law to be subject to discernable standards.

-13-

Beach County Bd. of County Comm'rs, 429 So. 2d 1260, 1265 (Fla. 1st DCA 1983) (recognizing that "adversely affected parties" have a right to challenge zoning decisions in court.). Moreover, going back to the very beginning of zoning, Euclid v. Ambler recognized that a plaintiff may have standing to bring an "as-applied" attack when it shows specific injury stemming from the application of a zoning code, including but not limited to application of the code to the plaintiff's own property. See 272 U.S. at 395-96.

## IV.
## SUMMARY JUDGMENT IS INAPPROPRIATE AS TO COUNT I

Dharma is a corporation which, under Florida law, cannot proceed *pro se*. See Quinn v. Housing Auth. of City of Orlando, 385 So. 2d 1167 (Fla. 5th DCA 1980) (a corporation must be represented by an attorney; complaints by unrepresented corporation were dismissed). Accordingly, Dharma's attorney properly signed and timely delivered a Verified Complaint to the City as required by section 163.3215. See Daytona MIGI Corporation, v. Daytona Automotive Fiberglass, Inc., 417 So. 2d 272, 274 (Fla. 5th DCA 1982) (dismissing a notice of appeal signed by a corporate officer who was not an attorney); Torrey v. Leesburg Regional Medical Ctr., 731 So.2d 748, 749 (Fla. 5th DCA 1999) (complaint filed by person not authorized to practice law in Florida was a nullity).[12]

The City provides no authority whatsoever, other than its novel conjecture, that the "form"

---

[12] The legislature is assumed to be aware of prior existing laws. See State v. Dunmann, 427 So. 2d 166 (Fla. 1983); Tamiami Trail Tours, Inc. v. Lee, 194 So. 305 (Fla. 1940) (holding that the legislature, in enacting a statute, is presumed to act with full knowledge of existing statutes relating to the same subject). Because R. 2.060, Fla. R. Jud. Admin., states at (d) that "[t]he signature of an attorney shall constitute a certificate by that attorney that the attorney has read the pleading or other paper; that to the best of the attorney's knowledge, information and belief there is good ground to support it and that it is not interposed for delay," the legislature's inclusion of this language at subsection 163.3215(6) would be redundant and without purpose unless it were intended that an attorney could sign all documents required under section 163.3215, including a verified complaint to the local government.

of a verified complaint is jurisdictional.  Indeed, no Florida court has reported a decision in which it denied  jurisdiction under section 163.3215 due to a defect in the form of a verified complaint. Moreover,  Florida case law provides that "the  failure  to  duly  verify  [a]  petition  for certiorari [although statutorily  required]  is not a jurisdictional defect; but, on the contrary, should be treated as a matter of practice and procedure."  Zbar v.Clarke, 278 So. 2d 292, 294 (Fla. 2d DCA 1973).

"The purpose of section 163.3215(4) is to alert a local government to an impending court challenge,  allowing  local government a last chance to respond to before a case is filed in circuit court."  Thomas v. Suwannee County, 734 So. 2d  492, 498 (Fla. 1ˢᵗ DCA 1999).  Although Dharma's Verified Complaint was timely delivered, the City never responded in any manner.  To the extent that the  City  had any  grounds  to complain about the  form of Dharma's Verified Complaint, it waived those grounds when it failed to comply with the mandate of the statute.  The statute requires that the local government "shall respond" nevertheless.  See § 163.3215(4), Fla. Stat. (2000)  The legislative intent of subsection 163.3215(4) to provide notice has been served by Dharma's timely complaint and the City is estopped from claiming an alleged defect in the form of the notice.  The Zbar court, in overturning the lower court's dismissal of an unverified but timely petition for certiorari, noted that the defendant city was not prejudiced, inconvenienced or misled in any manner by plaintiff's lack of verification.  See Zbar, 278 So. 2d at 293.  In the instant case, not only was the City not prejudiced, inconvenienced or misled in any manner, but it had prior written and verbal notice on the record that Dharma intended to challenge the City's action.  The City's effort seeks to foreclose Dharma's exclusive statutory right to challenge this development

order[13] as inconsistent with the comprehensive plan, not on the merits, but on a legally unsupported technical allegation.

As a remedial statute, Section 163.3215 "should be liberally construed to advance the intended remedy, i.e., to ensure standing for any party with a protected interest under the comprehensive plan who will be adversely affected by the government's actions." Education Dev. Center v. Palm Beach County 751 So. 2d 621, 623 (Fla. 4th DCA 1999) (citing Parker v. Leon County, 627 So. 2d 476, 479 (Fla. 1993)); see also Dotty v. State, 197 So. 2d 315 (Fla. 4th DCA 1967) (remedial statutes are to be construed liberally). Consequently, section 163.3215 must be liberally interpreted to advance the standing of any party who will be adversely affected by the government's actions. See Parker, 627 So. 2d at 479. Moreover, because a grant of summary judgment would deny Dharma its sole remedy under Florida law, any ambiguity in the language or legislative intent of Section 163.3215 must also be resolved in favor of Dharma.[14] See Education Dev. Center, 751 So. 2d at 623.

### V.
### THE CITY'S PRAYER FOR SUMMARY JUDGMENT AS TO COUNT II IS INCONSISTENT WITH ITS OWN ALLEGATIONS AND SHOULD BE DENIED.

The City's invocation of the doctrine of abstention in a matter it removed to federal court is absurd. The City argues that the grounds for abstention set forth in Colorado River Water

---

[13] Subsection 163.3215(3)(b), Florida Statutes (1999) provides that "suit under this section shall be the sole action available to challenge the consistency of a development order with a comprehensive plan adopted under this part."

[14] There being no defect in the timing or the substance of the notice, the court can allow leave to amend in order to cure a defect in pleading. Leon County v. Parker, 566 So. 2d 1315 (1st DCA 1992), quashed on other grounds, 627 So. 2d 476 (Fla. 1993); Thomas, 734 So. 2d at 496 (finding that the lower court might well have allowed an amendment to correct any procedural deficiencies).

Conservation Dist. v. United States, 424 U.S. 800 (1976), justify summary judgment. However, nothing in Colorado River supports abstention or summary judgment.

In Colorado River, the United States filed an action in federal court under 28 U.S.C. § 1345 to determine its water rights under Colorado law. See Colorado River, 424 U.S. at 805. While the case was pending, but before much had been done in the federal forum, another plaintiff filed essentially the same case in state court, and joined the United States in the state action. See id. at 805-6. At issue was whether the federal court should exercise its jurisdiction while the same case was pending in a state court with concurrent jurisdiction. See id. at 813. The court held that it should abstain (for reasons that are adequately set forth in Def.'s Mem. of Law at 7 ¶ 2), and dismissed the federal action. See id. at 819. Key to the dismissal was the fact that all of the issues of the United States's complaint would be considered in a virtually identical case that was pending before a Colorado state court. See id. at 820.

The present case would be like Colorado River if the same Complaint that is before this Court were also presently before the civil division of the state court in an original proceeding. However, such is not the case. Instead, this action is the original proceeding which the City removed to this Court. Dharma submits that the City is now barred from seeking abstention. See Chezem v. Beverly Enterprises-Texas, Inc., 66 F.3d 741, 743 (5th Cir.), reh'g denied (1995) (holding, "a party removing a case to federal court . . . may not thereafter advocate abstention.").

Moreover, the predicate for the City's claim of identical actions is fatally flawed. As a matter of law, the City's assertion that Dharma's *certiorari* petition provides a basis for abstention as to Count II is simply incorrect. "The fact that a similar action is pending in a state court does not mean that the federal court should abstain from deciding the case." Glickstein v. Sun Bank/Miami, N.A.,

922 F.2d 666, 674 (11th Cir. 1991).  To be sure, Dharma's *certiorari* petition before the Florida

circuit court is in some respects similar, however, the subject matter of that proceeding is sufficiently

different to preclude application of the abstention doctrine.

This is so because under Florida law, *certiorari* review of local government administrative

action is limited to consideration, <u>based solely upon the record of the proceedings</u>, as to whether the

quasi-judicial body:  (1) afforded procedural due process, (2) observed the essential requirements

of law, and (3) made its decision based upon substantial competent evidence in the record.  <u>See</u> <u>City</u>

<u>of Deerfield Beach v. Vaillant</u>, 399 So. 2d 1045, 1046 (Fla. 4th DCA), <u>reh'g denied</u> (1981).

Dharma's assertions in its Petition for *Certiorari* are substantially different from the *de novo*

vagueness challenge of Counts II and III of the Complaint.[15]

There being no basis for abstention, once this Court establishes that it has subject matter

jurisdiction, it has "a virtually unflagging obligation" to exercise that jurisdiction.  <u>See</u> <u>Colorado</u>

<u>River</u>, 424 U.S. at 817.  Accordingly, this Court cannot abstain from hearing this case – including

Count II – on its merits.

**VI.**
**THE CITY'S PERFORMANCE STANDARDS ARE**
**<u>VAGUE, BOTH ON THEIR FACE AND AS-APPLIED</u>**

The City's arguments in support of its performance standards are without merit.  The test for

vagueness in the commercial regulatory context is stated simply:  a statute or ordinance is void-for-

---

[15] Under Florida law, vagueness reaches many constitutional theories, including procedural and substantive due process, <u>see</u> <u>Drexel v. City of Miami Beach</u>, 64 So. 2d 317, 319 (Fla. 1953) (en banc), equal protection, <u>see</u> <u>Effie, Inc. v. City of Ocala</u>, 438 So. 2d 506, 508 (Fla. 5th DCA 1983), and unlawful delegation of legislative authority to an administrative body, <u>see</u> <u>Barry v. Garcia</u>, 573 So. 2d 932, 939 (Fla. 3d DCA 1991).  Each has a separate analytical construct, different proof elements, and may lead to a different remedy.  Therefore, full consideration of Dharma's constitutional claims requires *de novo*, not *certiorari*, review.

vagueness if it is "so vague and indefinite as really to be no rule or standard at all." Exxon Corp. v. Busbee, 644 F.2d 1030,1033 (5th Cir. Unit B 1981). Dharma agrees that the question of vagueness is one of law, and is therefore appropriately decided through summary judgment. However, the appropriate standard of review for a vagueness challenge is *de novo*. See United States v. Johns, 984 F.2d 1162, 1163 (11th Cir. 1993) (holding that questions of law are reviewed *de novo*).

Dharma respectfully submits that upon *de novo* review of the section 4.4.14(I), City of Delray Beach Land Development Regulations, this Court should find that the City's performance standards provide "no rule or standard at all." On its face, section 4.4.13(I) of the City of Delray Beach Land Development Regulations provides a multitude of factors for quasi-judicial officers to consider when undertaking review of a conditional use application for an increase in density above the 30 units per acre that is permitted as-of-right in the CBD. While the ordinance states that the "maximum permissible density of a particular project will be . . . based upon the degree to which the development complies with the performance standards of this section and other applicable standards of the comprehensive Plan (sic) and Land Development Regulations," it provides no way to measure its suggested proportionality. City of Delray Beach, Fla., Land Dev. Regs. § 4.4.13(I)(1). Moreover, it provides a permissive "escape hatch" that allows Commissioners to arbitrarily approve or deny a project based on a wholly subjective determination of "compatibility."[16] (App. D, Dominguez Dep. at 154-55)

In the alternative, if this Court finds that the proportional construction of the ordinance that

_____

[16] Section 4.4.13(I)(1) provides, "Notwithstanding the above [determination of the degree of compliance], the approving body may deny an application for increased density where it is determined that the proposed project is not compatible in terms of mass and intensity of use with surrounding development."

-19-

was advanced by Counsel for the City survives a facial constitutional attack, it must find the ordinance unconstitutional as-applied.  This is so because the majority of the City Commission and the Director of Planning have stated that no analysis was performed as to the proportionality between the "degree of compliance" with the performance standards (and other sections of the Comprehensive Plan and Land Development Regulations) and the increase in density awarded by the Commission. (App. D, Archer Dep. at 58-60; Alperin Dep. at 88-89; Wright Dep. at 65; Schmidt Dep. At 65-66; Dominguez Dep. at 159-60)  Dharma has submitted a Motion for Partial Summary Judgment and accompanying Memorandum of Law that more fully details this argument.

   **WHEREFORE,** for the reasons stated herein and by the authority presented, Plaintiff Dharma Properties, Inc. respectfully requests that this Court deny the City of Delray Beach's Motion for Summary Judgment, and grant Dharma's Cross Motion for summary judgment on Counts II, III, and IV of its Complaint.

DATED this 22nd day of November, 2000.

**STEPHEN M. COHEN, ESQ.**
Florida Bar No. 335614
General Counsel
16 South Swinton Avenue
Delray Beach, Florida 33444
(561) 243-2620

**SIEMON & LARSEN**
Mizner Park
433 Plaza Real, Suite 339
Boca Raton, Florida 33432
(561) 368-3808

By: Charles L. Siemon

   Charles L. Siemon
   Florida Bar No. 194765
   Wendy U. Larsen
   Florida Bar No. 870293
   Todd G. Messenger
   Florida Bar No. 0385514
   Attorneys for Dharma Properties, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has been furnished by mail to: Susan A. Ruby, Esquire, City Attorney and Jay T. Jambeck, Esquire, Assistant City Attorney, City of Delray Beach, 200 N.W. 1st Avenue, Delray Beach, Florida 33444; Gerald F. Richman, Esquire and John R. Wittles, Esquire, Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A., One Clearlake Centre, 250 Australian Avenue South, Suite 1504, West Palm Beach, Florida 33401-5016 by first class United States mail this ___22nd___ day of November, 2000.

SIEMON & LARSEN

By: _____

**Charles L. Siemon**
Florida Bar No. 194765
**Wendy U. Larsen**
Florida Bar No. 870293
**Todd G. Messenger**
Florida Bar No. 0385514
Attorneys for Dharma Properties, Inc.